## Chamberlain v. Commonwealth.

(Decided October 2, 1925.)

### Appeal from Boyd Circuit Court.

Intoxicating Liquors—Conviction for Sale Sustained.—Evidence held sufficient to support conviction for sale of intoxicating liquor as against contention that verdict was unsupported by and contrary to evidence, and resulted from passion or prejudice of jury.

ALLAN N. CISCO for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHARLES F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This is an appeal from a judgment rendered by the Boyd circuit court upon a verdict of a jury finding the appellant, J. B. Chamberlain, guilty of the offense, duly charged by indictmnet, of unlawfully selling intoxicating liquor, and fixing his punishment at a fine of $300.00 and imprisonment of sixty days in jail.

The single ground urged by the appellant's counsel for the reversal of the judgment of conviction is that the verdict upon which it is based was unsupported by and contrary to the evidence and resulted from passion or prejudice on the part of the jury, which, it is insisted, entitled the appellant to a directed verdict of acquittal, his motion for which, made at the conclusion of the Commonwealth's evidence, was, as claimed, erroneously overruled by the trial court to the prejudice of his substantial rights.

The evidence introduced by the Commonwealth of the sale by appellant of the liquor for which he was indicted and convicted was furnished by the testimony of two witnesses, Willian Dailey and Roy Powell, detectives regularly in the employ of a Cincinnati detective agency, who were sent by it to Ashland, Kentucky, at the request and by the employment of the ministerial association of that city, of which the Rev. E. R. Overly is the official head, for the purpose of breaking up the illegal manufacture of and traffic in intoxicating liquors, claimed to be alarmingly prevalent in and adjacent to that city, by discovering the identity and subjecting to trial the persons engaged therein.

It appears from the admission of the appellant, Chamberlain, made in testifying in his own behalf, that he came as a stranger to Ashland about one month before the sale of the liquor in question was alleged to have been made, but his testimony does not disclose, nor does it appear from any other evidence in the record, from what state or place he came to Ashland. He testified, however, that after his arrival in that city he worked in the American Rolling Mills until January 5, 1925, and from that date until January 22 at a "hot dog stand;" but that on the latter date he accepted employment from one Cleve Schultz as a waiter and salesman in the restaurant and soft drink department of his place of business known as the "Colored Restaurant and Pool Room," where he was at work January 31, the day on which the

Commonwealth's witnesses, Dailey and Powell, testified the whiskey was purchased of him by the former.

Both Dailey and Powell testified that they became acquainted with the appellant a day or two after their arrival at Ashland from Cincinnati, which was about a week before his alleged sale of whiskey; that during that week they several times went to the restaurant and had pleasant conversations with the appellant; and the latter when testifying admitted the occurrence of these visits and conversations and the acquaintanceship resulting therefrom.

Dailey and Powell also testified that upon their visit to the restaurant at 2 p. m. January 31, the appellant, upon being informed by Dailey that he, or they, wished to purchase of him some whiskey, conducted them to the pool room, which was in the rear of the restaurant and separated from it by a kitchen, and produced from where it was concealed under a stove in the pool room two half-pint bottles filled with whiskey, both of which he then and there delivered to Dailey, who, upon receiving them, paid him therefor the agreed price of $2.00.

Dailey and Powell further testified that the two half-pint bottles of whiskey thus purchased of the appellant by Dailey were immediately carried by them to the residence of the Rev. E. R. Overly and there delivered to him, who, in their presence, appropriately labeled each of them for future identification. After labeling the two bottles of whiskey for the purpose stated they were, as shown by the testimony of Mr. Overly, found in the bill of evidence, at once delivered by him to H. D. Clarke, sheriff of Boyd county, who testified that by direction of Overly he immediately took them to the Ashland National Bank, where they were placed in a lock box of the bank's vault for safekeeping; and when introduced in evidence on the appellant's trial the two bottles and contents were identified by Dailey and Powell as the same bottles of whiskey purchased by Dailey of appellant and delivered by them to Overly, and by Overly and Clarke as the same received by Overly of Dailey and Powell and by Clarke placed in the vault of the bank.

The only contradiction of the positive testimony of Dailey and Powell as to the sale to Dailey of the two half-pint bottles of whiskey by the appellant, is found in the testimony of the latter, which broadly denies the making of such sale, or that he kept for sale, or had ever

sold, such liquor. The only other evidence introduced for him bore upon the question of his reputation, which evidence was furnished in part by the testimony given on the trial by one O. C. Mowery and in part by certain facts set forth in an agreement between counsel entered of record, to which the appellant claimed two absent witnesses, Tom Lyne and B. A. Harmon, would, if present, upon oath testify.

The competency of the testimony as to the reputation of the appellant, though its exclusion was not asked by the Commonwealth, might well have been questioned. But, if considered competent, it is entitled to little weight, for as the acquaintance of the witnesses named with him, admittedly was only of about a month's duration and they knew nothing of his previous life or habits, or how he was regarded by those to whom he was previously and better known, they were illy prepared to form or express an opinion as to his reputation. Although the witness, Mowery, did testify that he knew the appellant's reputation, had heard it discussed by others and that he believed it to be good, he failed to state in what particular or particulars it was good; and, though requested to do so, also failed to name any person he had heard discuss the appellant's reputation, or declare it good.

It is patent from Mowery's testimony as a whole, that his estimate of the appellant's reputation was based upon his personal association with him, rather than from what others said of him. Indeed, his testimony was substantially devoted to an account of his frequent and practically daily visits to the restaurant where appellant is employed, which is nearly opposite his furniture store, and the conversations he would have with him during such visits. These visits, he stated, were usually made to obtain a drink of water, which he was not accustomed to keep at his store. The witness further testified that he is not a drinker of intoxicating liquors and that on none of his visits to the restaurant where the appellant was employed did he ask for or obtain such liquors, nor did he see the appellant or any other person have, or sell to another, any intoxicating liquors.

The testimony attributed to the absent witnesses, Lyne and Harmon, by the agreed order of counsel is, that they were "about this place (restaurant) once or twice a day and never saw any whiskey sold there." It appears from the record that Schultz, the alleged proprietor of the restaurant, did not testify at the appel-

lant's trial, had not been summoned at a witness for the latter, and was at the time of the trial in Huntington, West Virginia.

While it was, perhaps, unnecessary, we have given a full and, as we believe, substantially correct synopsis of the evidence heard on the appellant's trial, in order to show that it affords no basis whatever for the contention of the latter's counsel that it fails to support the verdict.

It is, however, argued by counsel in support of this contention that the Commonwealth's witnesses, Dailey and Powell, were employed to secure the conviction of the appellant and his acquittal would have deprived them of any compensation for the services performed by them in causing him to be brought to trial, for which reason they had such an interest in his conviction and incentive to testify falsely as should have discredited them as witnesses and caused the jury to disregard their testimony. This argument is based upon a mere assumption of counsel and is wholly unsupported by anything contained in the bill of evidence. On the contrary, it appears from the evidence, and is an undisputed fact elicited from the cross-examination of Dailey by counsel for the appellant, that he and Powell were employed and worked on an agreed salary while at Ashland, as before going there, which alone compensated them for such services as they performed in that city, regardless of whether appellant, or others, brought to trial by their efforts, were convicted.

Obviously, this argument, which as applied to the two Commonwealth's witnesses named and their testimony, is without support from the evidence, might with greater force be applied to the appellant and his testimony, as his interest as the defendant under trial, in the result thereof, was paramount to that of any other witness testifying in the case.

The further contention of appellant's counsel that the verdict declaring his guilt resulted from passion or prejudice on the part of the jury, caused by the fact that his prosecution was instigated and backed by the Ministerial Association of Ashland, is also unsupported by the evidence. Certainly, there could have been nothing in the action of the Ministerial Association in obtaining the assistance of special agents to discover and subject to legal prosecution persons guilty, or suspected of being engaged in inflicting upon the city of Ashland the evils arising from the unlawful manufacture of and traffic in intoxicating liquors, to excite in the minds of the jury

passion or prejudice against the appellant. Equally unauthorized is the suggestion of the same counsel that the passion and prejudice, alleged to have caused the verdict, was contributed to by the personal presence of the Rev. E. R. Overly at the trial and by assistance rendered by him during its progress to those conducting the prosecution. That he was then present long enough to testify as a witness introduced for the Commonwealth is shown by the evidence, as is the fact that his testimony served to identify the two bottles of whiskey claimed to have been purchased by Dailey of the appellant and which, after their delivery to the witness by Dailey and Powell, the witness labeled and caused to be placed by the sheriff in the bank vault where they were until produced at the appellant's trial. But there is nothing in the evidence tending to prove that he was present throughout the trial, or gave any assistance to counsel for the Commonwealth while it continued. It may, therefore, truthfully be said, that the evidence wholly fails to sustain the theory of appellant's counsel that the verdict complained of by him was the result of passion or prejudice on the part of the jury, or that such passion or prejudice was superinduced by or through the instrumentality of the Ministerial Association or the Rev. E. R. Overly, its chief officer.

It is only necessary to add that this case cannot be differentiated from the many others in which has been announced the firmly established rule, that it is the province of the jury to pass upon the credibility of the witnesses, and also the evidence, and from it as a whole determine the truth of the matter or question in controversy, in doing which they may accept the testimony of one witness or set of witnesses, and reject that of another witness, or set of witnesses. And where there is any evidence conducing to establish the guilt of the defendant, it is not the province of the Court of Appeals to disturb the verdict. Indeed, in no case will it do so, unless the verdict be wholly without support from or is so flagrantly against the evidence as to indicate that it was the result of passion or prejudice, to such an extent as to shock the conscience of the court. Cook v. Commonwealth, 199 Ky. 111; Mattingly v. Commonwealth, 199 Ky. 724; George v. Commonwealth, 199 Ky. 43; Fannin v. Commonwealth, 200 Ky. 635.

The application of the rule stated to the evidence found in the record of the case at bar furnishes no cause

for disturbing the verdict. Indeed, it so amply sustains the verdict as to leave no doubt of the correctness of the finding thereby declared.

Wherefore, the judgment is affirmed.